UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MATTHEW ROTH AND
ROY SPIZALE

VERSUS

SENTRY INSURANCE, *et al.*

CIVIL ACTION

NO. 20-1298

SECTION M (3)

## ORDER & REASONS

Before the Court is a motion *in limine* by plaintiffs Matthew Roth and Roy Spizale (collectively, "Plaintiffs") to exclude the testimony of defendants' biomechanical expert, Dagmar Jewkes.[1] Defendants Valley Services, L.L.C. ("Valley Services") and Joseph Moorer (collectively, "Defendants") respond in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion in part and denying it in part.

**I. BACKGROUND**

This matter concerns personal injuries allegedly sustained as a result of an automobile accident. On June 3, 2019, Roth was driving a Ford F150 on Louisiana Highway 41 in St. Tammany Parish, Louisiana, with Spizale as his passenger.[3] Roth's vehicle was stopped at a red light when he was rear-ended by Moorer who was a driving a Ford transit van owned by Valley Services in the course and scope of his employment with that company.[4] Roth told the police that the impact caused his foot to momentarily slip off the break and the vehicle moved forward

---

[1] R. Doc. 59.
[2] R. Doc. 68.
[3] R. Docs. 1-3 at 1; 59-4 at 2.
[4] R. Docs. 1-3 at 1; 59-4 at 2.

approximately eight feet.[5] Plaintiffs filed the instant suit in the 39th Judicial District Court, Parish of St. Tammany, State of Louisiana, seeking damages for the injuries they allegedly sustained in the accident as a result of Moorer's negligence.[6] Defendants removed the action to this Court alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[7]

To defend against Plaintiffs' claims, Defendants hired Jewkes, a biomechanical expert, who holds a Ph.D. in injury prevention and crash safety and a master of science degree in biomechanical engineering.[8] Jewkes reviewed the crash report, vehicle repair documents, depositions of Plaintiffs, Moorer, and the investigating officer, Plaintiffs' medical records, and numerous scholarly articles to prepare her report.[9] Jewkes performed an accident reconstruction to determine the forces involved in the accident.[10] She then reviewed the scholarly literature and determined that it is statistically unlikely that such forces would result in disc herniations of the cervical spine and that a low-speed rear-end collision is more likely to result in soft tissue neck injury than to cause damage to the bony structures of the cervical spine.[11] Moreover, everyday activities such as sitting in a chair normally and quickly, walking and running, performing jumping jacks, and jumping exert similar forces on the lower back as do low-severity rear-end car accidents.[12] Jewkes opined that the forces on Plaintiffs' necks were negligible.[13] She also opined that Plaintiffs' neck and lower back issues are the result of degenerative disease, not a one-time traumatic event.[14]

---

[5] R. Doc. 59-4 at 2.
[6] *Id*. at 1-3.
[7] R. Doc. 1.
[8] R. Doc. 59-3 at 1.
[9] R. Doc. 59-4 at 14-18.
[10] *Id.* at 4-8.
[11] *Id.* at 8-10.
[12] *Id.* at 10-11.
[13] *Id.* at 11.
[14] *Id.* at 11-12.

## II.  PENDING MOTION

Plaintiffs move to exclude Jewkes' testimony as not satisfying the *Daubert* standard.[15] While Plaintiffs do not contest Jewkes' expertise or qualifications in biomechanics, they argue that Jewkes cannot offer opinions on medical causation and seek to exclude or limit her testimony in that respect.[16] In opposition, Defendants argue that Jewkes is unquestionably qualified to testify as a biomechanical expert and that her opinions are relevant and reliable.[17] They argue that she is not seeking to opine as to medical causation but rather as to the biomechanics of the accident in question.[18]

## III.  LAW & ANALYSIS

### A. *Daubert* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[15] R. Doc. 59.
[16] R. Doc. 59-1.
[17] R. Doc. 68.
[18] *Id.*

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

B. Analysis

Plaintiffs do not contest Jewkes' qualifications to testify as an expert in biomechanics. Rather, they argue that Jewkes offers impermissible opinions on medical causation, including, for example, that Plaintiffs' neck and lower back issues are the result of degenerative changes as opposed to the subject accident. As one court recently explained:

> Biomechanical engineering applies the principles of mechanics to the facts of a specific event and provides information about the forces generated in that event, and may explain how the body moves in response to those forces, and determine what types of injuries would result from the forces generated. Thus, biomechanical engineering is closely related to, and may sometimes overlap with, the field of medicine. But the two disciplines remain distinct mainly because, unlike medical doctors, biomechanical engineers do not diagnose and treat human physical ailments, conditions, diseases, pain, and infirmities. As a biomechanical engineer testified in another case, biomechanical engineers are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury because each individual person has his own tolerance level, and therefore, biomechanical engineers could testify only in general terms, *i.e.*, that "X" forces would generally lead to "Y" injuries and "Y" injuries are consistent with those the plaintiff claims to have suffered. Accordingly, biome[chan]ical engineers are qualified to render opinions as to the forces generated in a particular event and the general types of injuries those forces may

5

generate. However, biomechanical engineers are not ordinarily permitted to offer opinions about the precise cause of a specific injury.

*Ramirez v. Escajeda*, 2021 WL 1131721, at *10 (W.D. Tex. Mar. 24, 2021) (quotations, citaitons, emphasis, and alterations omitted).

After reviewing the record and Jewkes' report, the Court finds that Jewkes' report is reliable and relevant and her testimony as a biomechanical expert will help the trier of fact to determine whether the accident in question could have caused the injuries Plaintiffs claim. In other words, she can explain the forces involved in the accident and whether those forces are likely to generate the types of injuries Plaintiffs allege. However, because she is not a medical doctor, Jewkes may not offer opinions about the precise cause of a specific injury, including, for example, that the injury was caused by degenerative changes, rather than a one-time traumatic event.

### IV.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs motion *in limine* to exclude or limit Jewkes' testimony from trial (R. Doc. 59) is GRANTED as to precluding her from offering medical-causation testimony, but it is otherwise DENIED.

New Orleans, Louisiana, this 26th day of August, 2021.

                                                                           _____
                                                                           BARRY W. ASHE
                                                                           UNITED STATES DISTRICT JUDGE